## Tyrone Gas & Water Co., Appellant, *v.* Tyrone Borough et al.

534

Argued February 4, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

536

*William Watson Smith,* of *Smith, Buchanan, Scott & Gordon,* with him *Oliver H. Hewitt* and *Leon E. Hickman,* for appellant.—Clause 7 of section 34 of the Corporation Act of 1874 does not authorize a partial taking of appellant's property: Com. v. Mann, 168 Pa. 290; Bly v. Water Co., 197 Pa. 80; Croyle v. Water Co., 259 Pa. 484; Meadville Theological School v. Hempstead, 290 Pa. 222; Com. v. Gas Co., 11 Pa. Dist. R. 546; Hey v. Water Co., 207 Pa. 38; Motter v. Electric Co., 212 Pa. 613; York Haven W. & P. Co. v. Pub. Ser. Com., 287 Pa. 241; Tyrone G. & W. Co. v. Tyrone Boro., 195 Pa. 566; Pardee's App., 100 Pa. 408; White's App., 15 W. N. C. 313; Reynoldsville Boro. v. Water Co., 247 Pa. 26; Com. v. Coal Co., 296 Pa. 359; Carlisle Boro. v. Pub. Ser. Com., 81 Pa. Superior Ct. 475; New York & Queens Gas Co. v. McCall, 245 U. S. 345.

There are numerous rules of construction against a statutory interpretation which permits appellees to dismember appellant's works: Reynoldsville Boro. v. Water Co., 247 Pa. 26; Solar Electric Co.'s App., 290 Pa. 156; Madeira's Land Condemnation, 296 Pa. 65; Valmont Developing Co. v. Rosser, 297 Pa. 140; Phila.'s Petition, 60 Pa. Superior Ct. 594, 596; Solar Electric Co.'s App. (No. 1), 290 Pa. 156; Phila.'s Petition, 253 Pa. 434.

A rule of strict construction should be applied to clause 7 of section 34 because the right of a municipality to operate a gas and water works is not a governmental function: Central I. & S. Co. v. Harrisburg, 271 Pa. 340; Reigle v. Smith, 287 Pa. 30.

A statute should not be construed in such a way as to raise constitutional difficulties if another construction may rationally be supported: Com. v. Benn, 284 Pa. 421; Omaha v. Water Co., 218 U. S. 180.

As a matter of judicial decision, it has been ruled in a closely analogous case that there is no statutory right to dismember appellant's plant: Greensburg Boro. v. Water Co., 240 Pa. 481; United Lighting Co. v. Pub. Ser. Com., 84 Pa. Superior Ct. 24.

If appellee's interpretation of clause 7 of section 34 is correct, it cannot be applied constitutionally to appellant: Dartmouth College v. Woodward, 4 Wheat. 518; P. R. R. v. Duncan, 111 Pa. 353; Com. v. Water Co., 94 Pa. 516; Manheim Boro. v. Water Co., 229 Pa. 177; P. & R. Ry. v. Phila. Co., 228 Pa. 505; P. R. R. v. Phila. Co., 220 Pa. 100; Vicksburg v. Waterworks Co., 202 U. S. 453.

Clause 7 of section 34, as construed by appellees, is a violation of article XVI, section 8 of the Constitution of Pennsylvania: Perry v. Ry., 64 Pa. Superior Ct. 583; Strain v. Kern, 277 Pa. 209; Phillips's Est., 295 Pa. 349.

*Charles K. Robinson,* with him *Richard H. Gilbert* and *Charles A. Woods, Jr.,* for appellee.—The Tyrone Gas & Water Co. has subjected itself to the provisions of clause 7 of section 34 of the Act of 1874: Tyrone Gas & Water Co. v. Tyrone Boro., 195 Pa. 566.

This therefore raises the controlling and the only important question in this case, namely, whether the Borough of Tyrone can acquire the water plant without taking the gas plant and whether the Tyrone Gas & Water Co. having accepted the General Incorporation Act of 1874 can now compel the borough to take both the gas and water plants. The question therefore becomes one of interpretation and of construction of clause 7 of section 34 of the General Incorporation Act of 1874.

The cases dealing with the effect of the acceptance of the Constitution of 1874 and the General Incorporation Act of 1874, and the position occupied by these companies after such acceptance, uniformly hold that they are subjected to the provisions of the General Incorporation Act of 1874 the same as if they had been orig-

inally created under that act and must accept the burdens as well as the benefits of the Incorporation Act of 1874: Tyrone Gas & Water Co. v. Tyrone Boro., 195 Pa. 566; Meadville Theological School v. Hempstead, 290 Pa. 222.

One of the major purposes of the Corporation Act of 1874 was to establish uniformity among corporations: Com. v. Trust Co., 287 Pa. 251; Citizens Elec. I. Co. v. Power Co., 255 Pa. 145.

Acceptance by a corporation, specially chartered before 1874, of the Constitution and Act of 1874, renders it subject to the provisions of the Act of 1874: Tyrone Gas & Water Co. v. Tyrone Boro., 195 Pa. 566; Williamsport v. Water & Gas Co., 232 Pa. 232; Com. v. Flannery, 203 Pa. 28.

We do not contend, nor is it a necessary consequence of our argument, that acceptance of the legislation of 1874 deprived appellant of one of its charter purposes.

The language of clause 7 of section 34 will be construed against the corporation and in favor of the public because it is in the nature of a contract right reserved to the public: Wagner Free Institute v. Phila., 132 Pa. 612; Reynoldsville Boro. v. Water Co., 247 Pa. 26, 28; White v. Meadville, 177 Pa. 643, 655; New Brighton Boro. v. Water Co., 247 Pa. 232, 240; Com. v. Erie & N. E. R. R., 27 Pa. 339, 351; Scranton Electric Light & Heating Co.'s App., 122 Pa. 154, 175; Bly v. Water Co., 197 Pa. 80; P. R. R. v. Comrs., 21 Pa. 9.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 17, 1930:

The Tyrone Gas & Water Company is a corporation organized under the special Act of March 10, 1865 (P. L. of 1866, Appendix, 1147), to supply gas and water to the Borough of Tyrone. In 1893, the company accepted the present Constitution and the General Incorporation Act of April 29, 1874, P. L. 73, received letters patent to that effect, and thus brought itself under section 34,

clause 7 of that statute, (P. L. 95) which provides: "It shall be lawful at any time after twenty years from the introduction of water or gas, as the case may be,...... for the......borough......into which the said company shall be located, to become the owners of said works, and the property of said company, by paying therefor the net cost of erecting and maintaining the same, with interest thereon, at the rate of ten per centum per annum, deducting from said interest all dividends theretofore declared."

In 1926, the council of defendant borough enacted an ordinance "to acquire all the properties of the Tyrone Gas & Water Works Company owned and used by the said company for water works purposes"; whereupon the company filed a bill in equity to restrain any attempt by the borough to take over its water plant without a like acquisition of its gas works. The court below held that the water plant alone might be taken, and dismissed the bill. This appeal followed.

The broad question for our determination is whether, under the above quoted statutory provision, a gas *and* water company, chartered prior to 1874, which has formally accepted the Constitution and the General Incorporation Act of that year, must be taken in toto, or whether one of its facilities may be separately acquired. It might suffice to point to Tyrone Gas & Water Co. v. Tyrone Boro., 195 Pa. 566, as determining that plaintiff corporation is subject to clause 7, section 34 of the Act of 1874, and then to enter on an interpretation of the phraseology of that part of the statute, but, in view of the decision of the court below in the case now on appeal, with which we disagree, it seems best before examining the particular words for construction, to consider some other matters which shed light on the special point at issue.

The Constitution of 1873, by section 2 of article XVI, provides that "The General Assembly shall not...... alter or amend [the charter of] or pass any......gen-

eral or special law for the benefit of [a corporation existing at the date of the Constitution], except upon the condition that such corporation shall thereafter hold its charter subject to the provisions of this Constitution." The Act of 1874 provides, by section 26, P. L. 84, that "Corporations for any of the purposes named, and covered by the provisions of this act, heretofore created, ......upon accepting the provisions of the Constitution and of this act......, shall be entitled to all of the privileges, immunities, franchises and powers conferred by this act upon corporations to be created under the same." Plaintiff filed its acceptance under this provision.

The section just quoted, providing for acceptance of the Constitution, etc., by previously chartered corporations generally, differs from section 40, P. L. 103 (referred to in the opinion of the court below), covering acceptances only by corporations whose charters "are about to expire by lapse of time," in that the latter section particularly states that a corporation acting under it must "expressly surrender all privileges conferred ......by its original charter that are not enjoyed by corporations of its class under this act or general laws of this Commonwealth." Notwithstanding the omission of any such provision from section 26 (above quoted), under which plaintiff acted, we have held that all corporations accepting the Constitution and the Act of 1874 become subject to their several relevant provisions, and to those of other statutes subsequently passed (Tyrone Gas & Water Co. v. Tyrone Boro., supra, 575, 576; Com. ex rel. v. Flannery, 203 Pa. 28, 31, 32; see also Williamsport v. Citizens' Water & Gas Co., 232 Pa. 232) ; plaintiff company must be so viewed. But, as we understand the position of appellees, they contend that, under clause 7 of section 34 of the Act of 1874, the works and property connected with each of plaintiff's charter purposes may be acquired separately by the municipality, because, if plaintiff corporation had been formed after the enact-

ment of that statute, instead of before, it would have been obliged to take out two charters, one for the purpose of supplying water and another for the purpose of supplying gas, and in Tyrone Gas & Water Co. v. Boro. of Tyrone, supra, 575, we said that "all old corporations [accepting the act] were to be as if chartered immediately after the passage of said act." From this, and from a further statement in the case just mentioned, to the effect that one object of the Act of 1874 was "to obtain uniformity as respects corporations," appellees argue that all such concerns, whether chartered under the statute passed in that year, or, like plaintiff, incorporated prior thereto but accepting the Act of 1874, must, so far as that statute is in any wise concerned, be treated as though uniform in character; and, to accomplish this end, since companies which are initially incorporated under the Act of 1874 can have only one charter purpose, appellees contend that those previously incorporated can, by operation of clause 7, be reduced to a like state.

We are not impressed with appellees' contentions. To begin with, all general discussion in the case relied on by them concerning the purpose of the Act of 1874 to bring about uniformity of corporations, must, of course, be understood in connection with the facts and contentions then under consideration, and the contentions there involved did not, as here, go to the questions of whether part only of plaintiff's works and property could be taken under clause 7 of section 34 of the Act of 1874. In the next place, the opinion writer there states that the uniformity he had in mind was "as respects corporations of the same class," evidently meaning corporations similarly situated in a general sense. Under the construction which we are about to put on clause 7 of section 34 of that statute, companies in the same class as plaintiff,—specially incorporated for the purpose of both water and gas service,—which have accepted or may accept the Constitution and the Act of

542

1874, while continuing to enjoy the "express franchises" originally conferred on them (Meadville Theological School v. Hempstead, 290 Pa. 222, 224), i. e., the right to pursue the dual purpose for which they were chartered,—would in all general respects be as if they had been incorporated under the Act of 1874, and on an equal footing with all other companies formed thereunder, which satisfies the requirements of uniformity.

As stated in their printed argument, appellees "do not contend that......acceptance of the legislation of 1874 [expressly] deprived appellant of one of its charter purposes"; and we find nothing whatever in the Constitution, or in the Act of 1874, which stipulates or even suggests that, when a company like plaintiff, chartered to carry on two allied businesses, accepts the Constitution and the Act of 1874, it in any sense abandons the right to pursue both services as theretofore, or that such acceptance puts the company in a position where, by operation of clause 7 of section 34 of the act, it can be deprived of this right or in any degree have the business pursuits mentioned in its charter severed from one another. On the contrary, section 26 of the Act of 1874 particularly provides that companies originally incorporated for "any" of the charter purposes mentioned in that statute may accept the Constitution, etc., and the Act of 1874 names as one purpose for which companies may be incorporated thereunder, water service, and as another purpose, gas service. Webster's International Dictionary defines "any," "with special reference to quantity," thus: "one or some, however great or small in quantity or number." So a company, previously incorporated for one *or more* of the charter purposes enumerated in the Act of 1874, may properly be classed among (using the precise words of section 26 of that statute) "corporations for *any* of the purposes named and covered by the provisions of this act" (italics ours) ; thus falling within that classification, such a company is entitled, by the same section, to file an acceptance of

the Constitution and the Act of 1874, and, thereupon, again under the same section, it becomes "entitled to all the privileges, immunities, franchises and powers conferred [by the act itself] upon corporations...... created under the same"; further, in accord with our cases, such a corporation, after accepting the act, becomes subject to its burdens as well as its benefits: Meadville Theological School v. Hempstead, 290 Pa. 222, 224; Tyrone Gas & Water Co. v. Tyrone Boro., 195 Pa. 566, 575, 576, 577. In short, plaintiff company, albeit possessed of the right to pursue two of the charter purposes mentioned in the Act of 1874, instead of only one, was nevertheless privileged to file an acceptance of that statute and thereby became subject to the burdens and vested with the benefits of all its relevant provisions as though incorporated thereunder; but such acceptance in no sense placed the corporation in a position where its franchise to conduct both a gas and water business would be prejudiced.

This brings us to the consideration of the particular language employed in clause 7 of section 34 of the Act of 1874. Prior to 1874, it was quite usual to charter corporations for both gas and water service; such concerns were authorized at least as early as the Act of March 11, 1857, P. L. 77. When the clause before us provided that, "it shall be lawful at any time after twenty years from the introduction of *gas or water, as the case may be"* (italics ours), for the municipality in which a corporation is located to take over its works and property, this merely meant that the right to acquire such property accrued to the municipality at the end of twenty years from the date of the introduction of water, if the concern in question was purely a water company, or from the introduction of gas, if the corporation was purely a gas company, or, in a case like the present, where plaintiff is a water and gas company, then at the end of twenty years from the inauguration of service by the company, whether water or gas was

first introduced. Such is the plain meaning of the words under immediate consideration; their office is to set forth a condition precedent to the coming into operation of the right to take, created by clause 7, and on no reasonable construction can they be read as descriptive of or as marking out or measuring the right itself.

Now we come to the particular words upon the construction of which plaintiff's case depends. The clause provides that the borough "into which [a] company shall be located" is empowered to become the owner of the *"works, and the property of said company"* (italics ours). The word "works," when used in connection with an industrial or manufacturing business, usually comprehends the entire plant, including all the buildings, machinery and other equipment (Kern v. Walz et al., 136 N. Y. Supp. 412, 416; South St. Joseph Land Co. v. Pitt, 114 Mo. 135, 140, 21 S. W. 449, 450; City of Richmond v. Richmond & Danville R. R. Co., 62 Va. 604, 608); it seems plain that "works" was here employed in that comprehensive sense. The only helpful reference we find in our cases to the language under immediate consideration appears in Reynoldsville Boro. v. Reynoldsville Water Co., 247 Pa. 26, 29, where we said that, on payment of the proper consideration, a municipality would become entitled to have transferred to it the "entire property" of a corporation affected by clause 7 of section 34 of the Act of 1874; but the history of the enactment of this legislation (as stated in our cases) shows a purpose to protect, for the benefit of all concerned, capital invested in enterprises such as plaintiff company, which fact may be considered in construing the statute. For instance, in Tyrone Gas & Water Co. v. Tyrone Boro., supra (page 571), quoting from our opinion in an earlier case (White v. Meadville, 177 Pa. 643, 654), we state: "The legislature knew capital would not be invested in such an enterprise if in the future it were liable to confiscation," and that to protect against this was one of the purposes the legislature had

in view when it enacted clause 7. (See also pages 575, 576, 577). We have said the term "property" may include "everything that is the subject of ownership": Moore's Est., 241 Pa. 253, 255. Here, in clause 7, the term "property" is used in connection with "company," and not as descriptive of "works"; evidently, it was intended as an enlargement on the last mentioned word, and was employed in a comprehensive sense, to cover all the assets of an appropriated company which, for any reason, would not fall within the term "works." So far as our research shows, the present case is the first instance where a municipality has asserted the right to sever a gas and water company. The legislative intent that this should not be done seems clear. The very words of the clause in hand, as well as all other relevant considerations, indicate that the works and property of a company subject to the Act of 1874 must be taken under clause 7 of section 34 as a whole,—that there may be no piecemeal appropriations, and the assets of such a concern must be acquired in their entirety or not at all.

The conclusion just stated, that the works and property of plaintiff gas and water company must be taken, if at all, as a whole, is supported by the further provision for payment contained in the clause before us, which, after making the measure of compensation the net cost of erection and maintenance of a company's works and property, with interest at the rate of 10%, authorizes a deduction of all *dividends* previously declared. Dividends in the present instance were, and they usually are, declared from profits derived from the whole property of the corporation; they cannot, on any reasonable basis, be apportioned to one section of plaintiff's business; and, speaking generally, this would be so in all such cases. One might arbitrarily adopt an allocation of dividends without a standard on which to base the allotment, but it is inconceivable that the legislature had in mind any such procedure when it enacted the clause here in question, and the legislative intention

in this regard is an excellent key to the meaning of the preceding words in the clause. It follows that, since the dividends to be deducted from the purchase price were those derived from the whole property, only the property as a whole was intended to be taken. The case of Greensburg Boro. v. Westmoreland Water Co., 240 Pa. 481, cited by defendants, does not aid their contention to the contrary. That was an instance where a water company, serving one borough, sought to merge with other water companies in the vicinity, outside the borough limits, and the borough in which the company first located asked that it be restrained, on the ground, inter alia, that any such merger would interfere with or inconvenience that borough should it later desire to purchase the company's plant. It was held that the union of these companies (under permissive legislation passed subsequent to the Act of 1874) would not destroy the right of purchase reserved to each municipality by clause 7 of section 34 of that statute. The Greensburg Case is not parallel to the one now before us; the issue there involved being whether the company was so subject to and protected by clause 7 that it would not be allowed to merge, while here the question involved is whether a portion only of the company's works and property may be taken, leaving another, alleged unproductive part, on its hands. Finally, it may be noted that, under circumstances like those in the Greensburg Case, it would be possible and quite natural for the resulting company, knowing that its several plants were liable to be taken over in the future, at different times by different municipalities, to keep its accounts from the date of the merger in such a way that each plant could be separately credited with the proportion of dividends properly attributable to it; and therefore, as suggested by the opinion in that case (page 487), the complications as to deducting dividends would be "susceptible of an approximate accurate solution." In the present instance, however, the corporation erected its plant and paid dividends

many years prior to the Act of 1874, when, of course, there was no occasion to anticipate a future reason for allotting such divisions of profits as between the two branches of its business. Obviously, it might be so difficult for companies thus situated to allot dividends, years after payment, even approximately, to one branch of their business as against another, that it is inconceivable the legislature intended the clause under consideration to be applied in a manner which would make such a course necessary. Hence, from this consideration as well as others already discussed, it is but reasonable to conclude that, by clause 7 of section 34, the lawmakers intended to provide for the taking of all and not part of the works and property of corporations, either chartered under the Act of 1874 or which might accept the provisions of that statute. This construction does justice to the corporation whose property is taken, thus carrying out what we have previously said was one of the purposes of the legislation now before us, protection of capital invested in enterprises for public service; finally, it accords with a common-sense meaning of the words involved.

The decree of the court below is reversed, and it is ordered that the record be remitted with directions that the injunction prayed for shall issue; defendant borough to pay the costs.